FILED

MAY 2 5 2017

CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| VERN OLSON,<br><br>Plaintiff,<br><br>VS.<br><br>CITY OF WINNER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No.  17-3014<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

COMES NOW Vern Olson, and for his Complaint against Defendant City of Winner, states and alleges as follows:

## JURISDICTION, VENUE AND PARTIES

1)  This an employment discrimination action arising the Age Discrimination in Employment Act of 1967 ("the ADEA"), codified at 29 U.S.C. § 623(a), and as amended by the Older Workers Benefits Act of 1990 and the Civil Rights Act of 1991.

2)  This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 29 U.S.C. § 626 and 28 U.S.C. §§ 1331 and 1343(a)(4).

3)  Venue is proper in accordance with 28 U.S.C. § 1391(b).

4)  Plaintiff Vern Olson ("Olson")  is an adult resident of Tripp County, South Dakota. Olson was born in 1961 and was 54 years old in 2015, the relevant time period of this Complaint.

5)  Defendant City of Winner ("the City") is a municipality organized under the laws of the State of South Dakota.

6)  The City is an employer within the meaning of and subject to the ADEA.

7)  At all times relevant to this Complaint until October 6, 2015, Olson was employed by the City in Winner, South Dakota.

8)  Olson timely initiated his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about March 1, 2016.  On March 17, 2017, Olson received his Notice of Right to Sue from the EEOC.

## GENERAL ALLEGATIONS

9)  The City employed Olson in its Parks and Cemetery Department between 2010 and October 6, 2015.  Olson served as an Assistant Supervisor of that department.

10)  Olson has a CLD and thirty (30) years of experience driving the heavy equipment used by the City in its Water, Street and Parks departments.

11)  Olson performed his job in the manner expected by his employer.

12)  The City's policies prohibit discrimination in employment based upon age.  All administrators and supervisors are responsible for and are to be committed to achieving the City's stated equal employment opportunity goals.

13)  The City's policies provide that hiring, interview selection and termination decisions are made by the head of the relevant department and the City Council.

14)  The City's policies provide for a seniority policy that gives priority in employment to permanent, full time employees by length of service with the City.

15)  The City's policies require good cause for taking a disciplinary action against an employee.

16)  The City's policies require that in the case of dismissal, the employee is to be notified in writing of the dismissal and reasons for it by the department head; that written statement is to be initialed by the employee and placed in the employee's employment file.

17)  In 2014, Olson had expressed interest in transferring to the City's Street Department and discussed the opportunity with the Street Department's supervisor Harlyn Muhs, who told Olson

that the City "needs to hire younger people" and "you're too old."

18) Olson did not seek to apply because of Muhs' authority to hire and his open animus toward older workers like Olson.

19) Muhs' statement as a person with authority to hire demonstrates that the City has not historically enforced its equal employment opportunity policy.

20) Muhs subsequently retired from the City as the Street Department head and was replaced by Bob Bolzer on or about June 22, 2015.

21) After Bolzer replaced Muhs, the City advertised for an open position in its Street Department.

22) The City's Street Department job was advertised that a CDL was going to be required for the position and that heavy equipment experience was preferred.

23) Olson was qualified for the open Street Department position because he had a CDL and the preferred heavy equipment experience.

24) On July 20, 2015, Olson applied for the City's advertised Street Department position.

25) At that time and on other occasions, Olson discussed his application with Bolzer. During those conversations, Bolzer told Olson that Bolzer had informed the City Council that he wanted to hire Olson, but that the City Council and Finance Officer/HR Officer Rhonda Augspurger told Bolzer that the City was going re-advertise the position to try to get younger applicants.

26) Even though Olson was a qualified applicant, he was not interviewed for the open Street Department position.

27) To the best of Olson's knowledge, two other apparently qualified applicants in the protected age group were not advertised for the open Street Department position either.

28) In August 2015, the City re-advertised the position, again with the requirement that the

person must have or be able to obtain a CDL and that heavy equipment experience was preferred.

29) After the second advertisement, Bolzer again told Olson that Bolzer had informed that City Council that he wanted the authority to hire Olson. The City Council refused.

30) After the second advertisement for the position, Olson went to the mayor, Jess Keesis, to ask why he did not get an interview for the open position.

31) During this meeting, the mayor told Olson that Augspurger had said that Olson was going to quit and was "mean to summer help." When Olson pointed out that he was applying for the position (rather than quitting) and that other employees who had been actively looking for outside employment had been treated differently, the mayor responded that "those guys are a different story."

32) On or about September 23, 2015, the City hired a 31 year old male who had no CDL and far less experience operating heavy equipment than Olson had.

33) The 31 year old who was hired for the Street Department job was paid more than the $13.76 an hour than Olson was paid.

34) Olson complained to Bolzer and to Cerv that the younger and less qualified male had been selected for the position when Olson had not even been interviewed.

35) Olson requested and was approved for vacation leave from September 23 through October 2, 2015.

36) After Olson reported to work on October 6, his immediate supervisor Calvin Cerv approached him at work and told Olson that Olson was being terminated for insubordination and that Olson needed to submit a resignation by the end of the work day.

37) At the end of the work day on October 6, the City Attorney, Cerv and Augspurger met

with Olson to reiterate that Olson was fired, and that if Olson did not submit a letter of resignation, Olson would not receive his accrued vacation and sick pay.

38) Olson submitted a note of resignation only because he had already been terminated.

39) When Olson attempted to file a grievance after his termination, Augspurger advised him that under City policy, only employees had the right to a grievance.

40) Olson was replaced by a male employee who was 25 years old.

41) The 25 year old employee who replaced Olson was paid $15.20 an hour and full benefits, which was more than the $13.76 an hour Olson was paid for the job despite his years of experience.

42) When Olson asked his former supervisor, Cerv, about why he had been terminated, Cerv made the following statements to Olson:

    a.  Cerv had not requested Olson's termination;

    b.  Cerv had been informed by Augspurger that Olson was going to be terminated and that Cerv had to execute the termination;

    c.  Cerv had not documented problems with Olson's performance prior to the termination decision, and instead, Augspurger told him about the termination and then presented Cerv with a prepared document to sign.  The document stated incorrectly that Cerv requested Olson's termination or resignation;

    d.  Cerv had signed the document that Augspurger presented to him even though Cerv saw that it included complaints and requests that Cerv did not make;

    e.  Cerv believed that Olson was going to be fired no matter what Olson or Cerv did;

    f.  Cerv expressed that Cerv had been surprised, "left out of the loop" and "thrown under the bus" by the City because he had not requested Olson's termination;

g.  Cerv did not know the real reason for Olson's termination; and

h.  Cerv would hire Olson back "in a heartbeat" but did not believe that Olson would be able to get the City Council to hire him back.

43)  In response to Olson's EEO Charge of Discrimination, Augspurger represented that Cerv had documented his alleged complaints about Olson's performance in a letter dated July 1, 2015, prior to Olson's termination.

44)  The City's letter dated July 1, 2015 was the document presented to Cerv by Augspurger after she informed him that Olson was going to be fired.  The letter inaccurately represents that Cerv was recommending that Olson "resign or be put on suspension with no pay until the council meets in a special meeting on Wednesday October 14 2015 and at that time they can decide on termination."

45)  Olson suffered adverse employment actions when the City abruptly terminated him.

## COUNT I:  VIOLATION OF THE ADEA
### (Age Discrimination in Employment)

46)  At all times relevant to this Complaint, Olson was in the protected age group for the purposes of the ADEA.

47)  As indicated by his long-term employment and the lack of disciplinary action or performance improvement reviews, Olson was qualified for his position with the City of Winner.

48)  During the course of his employment, Olson was discouraged from applying for a position that he was qualified for because a City supervisor who had selection and hiring authority openly expressed that Olson was "too old" and that the City needed to hire younger workers.

49)  Olson was qualified for the position with the City of Winner that he applied for in July and August 2015.

50)   Olson was not selected or interviewed for a position with the City of Winner that he applied for despite his qualifications for the position.

51)   A younger worker who was not in the protected age group was hired instead of Olson.

52)   After Olson complained to two of the City's department heads that the younger worker was hired when he was not interviewed despite his qualifications, the City of Winner terminated Olson.

53)   The City of Winner hired a substantially younger worker to fill the position that Olson was fired from without advertising the position.

54)   The City of Winner created documentation and back dated it after it determined to terminate Olson's employment in order to paper Olson's personnel file.

55)   The City of Winner did not follow its own policies in hiring, disciplining or terminating Olson.

56)   The City of Winner did not have good cause to discipline or terminate Olson.

57)   The City of Winner has provided shifting explanations for Olson's termination including unspecified insubordination, the disputed pre-termination recommendation for termination by Olson's supervisor, an allegation that Olson was threatening to quit employment, an alleged voluntary resignation from Olson.

58)   The City of Winner required Olson to sign a statement of resignation even though it had already terminated Olson.

59)   The City of Winner's proferred reasons for failing to hire Olson and for terminating his employment are pretextual.

60)   The City of Winner subjected Olson to arbitrary age discrimination in employment.

61)   The City of Winner failed or refused to hire Olson for an open position he was qualified

for because of his age.

62) The City of Winner terminated Olson from a job that he was qualified for without the recommendation of his supervisor in violation of its own termination policy because of his age.

63) As a direct and proximate result of the City of Winner's discriminatory action in refusing to interview or hire Olson because of his age, Olson suffered a loss of wages and employment-related benefits, and loss of future wages and employment-related benefits.

64) As a direct and proximate result of the City of Winner's discriminatory action in terminating Olson's employment because of his age, Olson suffered a loss of wages and employment-related benefits, and loss of future wages and employment-related benefits.

65) The City of Winner's violations of the ADEA in its adverse employment actions against Olson were willful and intentional.

## REQUESTS FOR RELIEF

Plaintiff Vern Olson requests and prays for judgment against Defendant City of Winner as follows:

1) For monetary damages sufficient to compensate him for all special and general damages as allowed by the ADEA;

2) For his reasonable attorney fees, costs, disbursements and expenses incurred in the pursuit of this matter as allowed by the ADEA;

3) For liquidated damages as allowed by the ADEA;

4) For a trial by jury; and

5) For such other and further equitable relief as the Court may deem just and appropriate.

Dated this 23rd day of May, 2017.

JOHNSON POCHOP & BARTLING

_____
Stephanie Pochop
405 Main Street | PO Box 149
Gregory, SD 57533
(605) 835-8391
Stephanie@Rosebudlaw.com
*Attorney for Plaintiff Vern Olson*